DAVID C. McELHINNEY, ESQ.
NV Bar No. 0033
SCOTT S. HOFFMANN, ESQ.
NV Bar No. 8498
LEWIS AND ROCA LLP
Bank of America Plaza
50 W. Street, Suite 410
Reno, Nevada  89501
Telephone: (775) 823-2900
Facsimile: (775) 823-2929
Attorneys for Defendant
BANNER HEALTH

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KELLE HERZOG,<br><br>      Plaintiff,<br><br>vs.<br><br>BANNER CHURCHILL COMMUNITY HOSPITAL and Does I-X, inclusive<br><br>      Defendants. | Case No.<br><br>(Third Judicial District Court, Churchill County, Nevada, Case No. 35166)<br><br>**DEFENDANT BANNER HEALTH'S NOTICE OF REMOVAL (DIVERSITY)** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

  PLEASE TAKE NOTICE that Defendant, Banner Heath, erroneously sued herein as Banner Churchill Community Hospital ("Banner" or "Defendant"), hereby removes the above-captioned case from the Third Judicial District Court, County of Churchill, State of Nevada, to the United States District Court for the District of Nevada.  This removal is pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  Banner respectfully states as follows:

1.  On or about September 9, 2009, an action was commenced in the Third Judicial District Court, Churchill County, State of Nevada, entitled *Kelle Herzog v. Banner Churchill Community Hosptial* Case No. 35166, alleging a single cause of action for wrongful termination related to the alleged contructive termination of Plaintiff. Plaintiff seeks general and special damages, punitive damages, and attorney's fees related to alleged wrongful termination.

2.  <u>Basis for Jurisdiction in this Court: Diversity</u>. This action is a civil action that may be removed on the basis of diversity jurisdiction, 28 U.S.C. §§ 1332 and 1441. Section 1441(a) provides, in part, that "any civil action brought in a state court of which the district courts have original jurisdiction, may be removed by the defendant...." Section 1332 provides, in turn, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00," and there is complete diversity of the parties. *See* 28 U.S.C. § 1332(a)(1).

3.  There is complete diversity between Plaintiff, who is a citizen of Nevada, and Defendant Banner, which is a citizen of Arizona.

    a.  <u>Citizenship of Plaintiff</u>. Per the allegations of the Complaint, Plaintiff Kelle Herzog is, and at all times material herein, remains a citizen and resident of Washoe County, Nevada. (Pl. Complaint at ¶ 1). Thus, Plaintiff is a Nevada citizen for purposes of determining federal diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(2).

    b.  <u>Citizenship of Defendant Banner Health</u>. Defendant Banner is, and at all times material herein, and remains an Arizona corporation with its principal place of business in Phoenix, Arizona. It is, therefore, a citizen of Arizona for purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

4.  Banner was served with a copy of the Complaint on or about September 17, 2009. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 82 because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 1141(a).

6.  No previous application has been made for the relief requested herein.

Lewis and Roca LLP
0 West Liberty Street, Suite 410
Reno, Nevada 89501

109826.1

7. <u>Amount in Controversy</u>. The Nevada Rules of Civil Procedure provide "[w]here a claimant seeks damages of more than $10,000, the demand shall be for damages "in excess of $10,000" without further specification of amount." Nev. R. Civ. P. 8(a). Therefore, Plaintiff here was barred by court rule from specifying an amount in controversy in excess of $75,000 in her Complaint. However, when the amount in controversy is not set forth in the Complaint, the Court may consider the removal petition. *See Singer v. State Farm Mutual Auto Insurance Co.*, 116 F.3d 373, 377 (9th Cir. 1997). The amount in controversy requirement is satisfied if the removing party establishes by a preponderance of evidence that the amount in controversy is above the jurisdictional threshold. *See Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004).

8. Here, Banner can show that the amount in controversy and/or being claimed by the Plaintiff is in excess of $75,000. Plaintiff alleges that she was contructively terminated by Banner due to her whistleblowing activities. (See Pl. Complaint at ¶¶ 7 through 52). Plaintiff claims that the value of her claim is in excess of $40,000, and should be excluded by the Mandatory Arbitration Program. (See Pl. Complaint Caption). Plaintiff further alleges that after she was contructively terminated, she secured replacement employment at a substantially reduced hourly rate, and without monthly benefits. (See Pl. Complaint ¶ 51). Additionally, Plaintiff alleges that Banner's conduct was "willful and malicious with the intent to harm Plaintiff, justifying an award of punitive damages". (See Pl. Comlaint ¶ 57). The punitive damage claim easily places the amout claimed in excess of $75,000. Plaintiff also makes a claim for attorney's fees and costs. (See Complaint Pl. ¶ 56). Based on the foregoing, it is likely that the amount in controversy exceeds $75,000.

9. Pursuant to 28 U.S.C. § 1146(a), copies of all pleadings filed in the Third Judicial District Court are attached as Exhibit "A". Pursuant to 28 U.S.C. § 1146(d), a copy of this Notice of Removal is being served upon Plaintiff s' counsel, and a copy is being filed in the State Court matter.

10   If any question arises as to the appropriateness of the removal of this action, Banner requests the opportunity to brief any disputed issues, and to present oral argument in support of its position that this case is properly removable.

Lewis and Roca LLP
0 West Liberty Street, Suite 410
Reno, Nevada 89501

109826.1

11    Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Banner's right to assert any defense or affirmative matter including, without limitation, the defenses of (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) failure to state a claim; or (6) any other procedural or substantive defense available under state or federal law.

WHEREFORE, Defendant Banner Health respectfully removes this action from the Third Judicial District Court, In and For Churchill County Nevada, bearing Case No. 35166, to this Court pursuant to 28 U.S.C. § 1441.

Dated this 28th day of September, 2009.

LEWIS AND ROCA LLP

By: _____
DAVID C. McELHINNE, ESQ.
SCOTT S. HOFFMANN, ESQ.
Attorneys for Defendant, Banner Health

Lewis and Roca LLP
0 West Liberty Street, Suite 410
Reno, Nevada 89501

**CERTIFICATE OF SERVICE**

Pursuant to Fed.. R. Civ. P. 5(b), I hereby certify that on the 28th day of September, 2009 service of DEFENDANT BANNER HEALTH'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1441(b) (DIVERSITY) was made by depositing a copy for mailing, first class mail, postage prepaid, at Reno, Nevada, to the following:

Clayton P. Brust, Esq.
Robison, Belaustegui, Sharp and Low
71 Washington Street
Reno, Nevada 89503
(775) 329-3151
Attorney for the Plaintiff

*Rebecca Law*
An Employee of Lewis and Roca

# EXHIBIT A

# EXHIBIT A

Clayton P. Brust, Esq. (SBN 5234)
**ROBISON, BELAUSTEGUI, SHARP & LOW**
71 Washington Street
Reno, Nevada 89503
(775) 329-3151
Attorneys for Plaintiff
Kelle Herzog

FILED
2009 SEP -9 PM 3:25
KELLY G. HELTON
COUNTY CLERK
BY ERIKA DEPUTY
ALEGRE

IN THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF CHURCHILL

KELLE HERZOG,

    Plaintiff,

vs.

BANNER CHURCHILL COMMUNITY HOSPITAL, and DOES I-X, inclusive,

    Defendants.
_____/

CASE NO. 35164

DEPT. NO. 3

**COMPLAINT**
(Jury Demand)
(Exempt From Arbitration -
Value in Excess of $40,000.00)

Plaintiff, Kelle Herzog, alleges:

**PARTIES**

1. Kelle Herzog is a resident of Washoe County, Nevada.

2. Upon information and belief, Defendant Banner Churchill Community Hospital, is and was at all times relevant hereto a Arizona corporation licensed to conduct business in Nevada and operating in Churchill County, Nevada.

3. All acts alleged herein occurred in Churchill County, Nevada.

ROBISON,
BELAUSTEGUI,
SHARP & LOW.
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE

4. The true names or capacities, whether individual or corporate, associate, or otherwise, of Defendants designated as Does I-X are unknown to Plaintiff but are believed to be parents, subsidiaries, or agents or Defendant and therefore Plaintiff sues these Defendants by fictitious names. Plaintiff will amend this Complaint to show the true names and capacities when they have been ascertained.

**FACTS**

5. Plaintiff began working for Defendant on or about July 28, 2008 as a Physician's Assistant.

6. Plaintiff's employment with Defendant was unmarred by any serious or employment threatening disciplinary actions by Defendant, until the last few day of Plaintiff's employment with Defendant.

7. On the morning of April 14, 2009, Plaintiff asked medical assistant Kellen Diaz to pull patients chart after patient called and asked if Mike Forrest, another Physician's Assistant, had talked to Plaintiff about a refill of the patient's prescription. Plaintiff did not know anything about this refill.

8. When Plaintiff received the chart, she noticed that the patient was prescribed 720 15 mg. Oxycodone every 14 days.

9. Plaintiff was very alarmed at the amount the patient was prescribed.

10. Plaintiff asked Dr. Mooney, who also works in the same office, what he would do in this situation. Plaintiff did not reveal the patients name.

11. Dr. Mooney suggested that Plaintiff get in touch with Mike Forrest's supervising physician.

12. Plaintiff called Long's pharmacy in Fallon, Nevada to confirm that the patient was actually filling these prescriptions.

13. Plaintiff was unsure how to proceed and decided to consult with the Emergency Room director Dr. Aikin, who was on duty, about the matter.

14. Again, Plaintiff did not reveal the patients name to Dr. Aikin, but did tell him the situation.

15. Dr. Aikin instructed Plaintiff to report the unusually high prescription to the Chief of Staff, Dr. Murray.

16. Dr. Aikin also said he was going to contact Dr. Thunder.

17. Dr. Thunder is the supervising physician of Mike Forrest PA-C. Plaintiff also tried calling Dr. Thunder and left him a message on his answering machine regarding the situation.

18. Plaintiff then called Dr. Murray and told him the situation. Dr. Murray told Plaintiff that he is not in charge of the hospital clinics and that Plaintiff needed to report to DeAnn Adamson, the Clinic Manager, and Rhonda Carey, the director of Risk Management. Plaintiff left both of these people a message.

19. Plaintiff then walked down to administration to report the incident to the acting hospital administrator, Cindy Johnson.

20. Plaintiff was told by a secretary that Ms. Johnson was in a meeting and that Rhonda Carey was gone for the day having a root canal. Plaintiff left a message to have Cindy Johnson come see Plaintiff when she was available.

21. Plaintiff then called the Nevada State Board of Medical Examiner's and told them the scenario without revealing the patient's name. Plaintiff spoke with

-3-

1 an investigator, Heather, who informed Plaintiff that Plaintiff was required by law to
2 report this situation or that Plaintiff could be in legal trouble with the board.
3 Accordingly, Plaintiff reported to her over the phone. Heather instructed Plaintiff to
4
5 report to the Nevada State Board of Pharmacy, which Plaintiff did.
6    22.    Plaintiff then tried to call the Narcotic's Task Force hotline to report
7 confidentially and the patient answered the Narcotic's Task Force phone. Plaintiff
8 said that she had the wrong number and that she meant to call the Sheriff's office.
9    23.    Plaintiff then called the Sheriff's department and spoke to Jim Wood,
10
11 the Sheriff. Plaintiff told Mr. Wood the situation and he told Plaintiff to call the
12 Narcotic's Task Force. Plaintiff told him that she could not do that. Mr. Wood then
13 surmised it must be one of his officers. Plaintiff never use the patient's name.
14
   24.    DeAnn Adamson and Cindy Johnson then visited Plaintiff's office,
15
16 and Plaintiff explained to them what was occurring. Ms. Adamson took the
17 patient's chart from Plaintiff's office and both Ms. Adamson and Ms. Johnson left.
18    25.    At approximately 5:00 p.m. that afternoon, Plaintiff was summoned to
19 Ms. Adamson's office. Present were Plaintiff, DeAnn Adamson, and Rhonda Carey.
20
   They asked Plaintiff to relay the events of the day. They also told Plaintiff that she
21
22 should never have reported to the Nevada State Board of Medical Examiners or the
23 other agencies involved.
24    26.    Ms. Adamson and Ms. Carey told Plaintiff that she was going to
25 "destroy lives" of the police officer and Mr. Forrest's families.
26
   27.    Plaintiff told Ms. Adamson and Ms. Carey that Plaintiff was legally
27
28 obligated to report and both Ms. Carey and Ms. Adamson told Plaintiff that she had

-4-

1  "blown it."

2      28.    Ms. Carey told Plaintiff that she was not allowed to go outside of
3  Banner to report anything. Ms. Carey said Banner could have handled this situation
4  internally and that because of Plaintiff, Plaintiff could cause the state of Nevada to
5  investigate Banner.
6  

7      29.    Plaintiff stated that she was not concerned with a state inspection or
8  review of her charts.

9      30.    Plaintiff told Ms. Carey and Ms. Adamson that she was concerned
10 about her license and Rhonda Carey replied that Plaintiff had nothing to worry
11 about because she was not the prescribing provider.
12 

13     31.    Ms. Adamson told Plaintiff that because Plaintiff was an employee of
14 Banner that she was forbidden to go outside of Banner to report anything.

15     32.    Ms. Carey confirmed this and said if Plaintiff was an independent
16 provider that Plaintiff could report to outside agencies.
17 

18     33.    Plaintiff told Ms. Carey that the State Board of Medical Examiners
19 disagreed with this statement.

20     34.    Again, Ms. Carey said that Plaintiff should have kept this matter "in-
21 house." Plaintiff repeatedly told Ms. Carey and Ms. Adamson that Plaintiff did
22 what she was trained to do and legally, morally and ethically required to do. At this
23 point, Plaintiff was very fearful for her job.
24 

25     35.    Ms. Carey asked Plaintiff who else Plaintiff had talked to about this
26 matter.
27 

28     36.    Plaintiff disclosed that Dr. Aikin knew about the situation.

-5-

37. Ms. Carey asked Plaintiff why she had not reported this to her supervising physician Galen Reimer.

38. Plaintiff told Ms. Carey that Plaintiff had tried to report to Dr. Reimer, but that Dr. Reimer was with patients and that Plaintiff was going to attempt calling him again.

39. Ms. Carey said she would "bet her license" that Dr. Reimer would be very upset with Plaintiff for reporting to the state board.

40. Ms. Adamson said she also knew that Dr. Reimer would never report against another provider.

41. Plaintiff told them both that Dr. Reimer is extremely ethical and she doubted he would tell Plaintiff to sacrifice her ethical, moral, and legal obligation.

42. After this meeting Plaintiff was very fearful of losing her job. Plaintiff tried calling Dr. Thunder again and this time he answered the phone. Plaintiff told him the story and he was already aware because he had spoken with Dr. Aikin, and DeAnn Adamson and Rhonda Carey had called him as well.

43. Plaintiff got in touch with Dr. Reimer that evening and told him what she had done. Of course, Dr. Reimer did not say that Plaintiff should not have reported it.

44. Plaintiff had a phone conference with Lori Gill from Banner's Human Resources and Rhonda Carey on Thursday the 16th of April, 2009. They asked Plaintiff to relay the chronology of events. Lori Gill also told Plaintiff that Plaintiff was under investigation and that Ms. Gill was talking with witnesses. Plaintiff was extremely very worried about losing her job during this entire conversation and tried

-6-

to relay the events as they unfolded. Plaintiff was not 100% certain of the exact times of the phone conversations that she had the previous day.

45. Ms. Gill did ask Plaintiff if Plaintiff had discussed the matter with Dr. Mooney and Plaintiff told her that she had.

46. Plaintiff felt under pressure for this conversation and was not really sure what to say or not say because she was afraid of losing her job. At the end of the phone conversation, Ms. Gill told Plaintiff that Plaintiff was being placed on administrative leave with pay because Plaintiff had discrepancies in her story and that she sounded like she was under emotional stress.

47. Plaintiff told Ms. Gill that she was being retaliated against and Plaintiff also relayed the conversation with DeAnn Adamson and Rhonda Carey.

48. On Wednesday the 22nd of April, 2009, Lori Gill called Plaintiff and requested a meeting with Plaintiff for April 28, 2009 at 3:00 p.m.. Plaintiff asked if her attorney could be present and Ms. Gill told Plaintiff no because Plaintiff was an at will employee. Plaintiff asked Ms. Gill again what she was on administrative leave for and Ms. Gill said that it was because of a possible "HIPPA" violation and because Plaintiff was emotional during the telephone conference.

49. Defendant then informed Plaintiff she would be terminated. Plaintiff then hired counsel who intervened on Plaintiff's behalf, and Plaintiff was then informed she would receive formal discipline if she decided to return from administrative leave.

50. Plaintiff understood that the disciplinary action threatened by Defendant would permanently mar her employment record, hamper her career, and

-7-

damage her future income.  Plaintiff also felt intimidated and threatened by the hostile environment created by Defendant's actions to protect itself from possible state investigations and to protect is employee who was potentially over-prescribing controlled substances. Accordingly, Plaintiff resigned her position.

51.  Plaintiff has secured replacement employment to the best of her ability, but at a substantially reduced hourly rate and without the monthly benefits to which she was entitled when she worked for Defendant. Plaintiff has also been damaged by having to endure Defendant's wrongful conduct.

52.  Plaintiff has been forced to obtain counsel to protect her right and prosecute this matter as a direct result of Defendant's wrongful actions.

**FIRST CAUSE OF ACTION**
**(Wrongful Termination)**

53.  Plaintiff incorporates the allegations contained in paragraphs 1-52 as if set forth verbatim.

54.  Defendant's termination of Ms. Herzog constituted unlawful retaliation and wrongful termination in violation of Nevada Public Policy.

55.  Defendant's wrongful actions have caused Ms. Herzog damages in excess of $10,000.00.

56.  Plaintiff has also been forced to retain counsel to pursue this action and has incurred attorney's fees as a result of Defendant's actions.

57.  Defendant's actions were willful and malicious with intent to harm Plaintiff, justifying an award of punitive damages.

-8-

WHEREFORE, Plaintiff requests the judgment be entered against Defendant as follows:

1. For an award of general and special damages in excess of $10,000.00;

2. For an award of punitive damages in excess of $10,000.00;

3. For reasonable attorney's fees and costs of the suit; and

4. For such other proper relief this Court deems just and necessary.

### AFFIRMATION
### Pursuant to NRS 239B.030

The undersigned does hereby affirm that the preceding document and/or attachments do not contain the social security number of any person.

DATED this 28th day of August, 2009.

```
                          ROBISON, BELAUSTEGUI, SHARP & LOW
                          a Professional Corporation
                          71 Washington Street
                          Reno, Nevada 89503


                          By: _____
                              CLAYTON P. BRUST
                              Attorney for Plaintiff
```

J:\WPData\CPB\5371.001 Herzog\P-Complaint.wpd

-9-

Clayton P. Brust, Esq. (SBN 5234)
**ROBISON, BELAUSTEGUI, SHARP & LOW**
71 Washington Street
Reno, Nevada 89503
(775) 329-3151
Attorneys for Plaintiff
Kelle Herzog



FILED
2009 SEP -9 PH 3:27
KELLY G. HELTON
COUNTY CLERK
BY ERIKA ALEGRE DEPUTY

IN THE THIRD JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

IN AND FOR THE COUNTY OF CHURCHILL

KELLE HERZOG,

    Plaintiff,

vs.

BANNER CHURCHILL COMMUNITY HOSPITAL, , and DOES I-X, inclusive,

    Defendants.
_____/

CASE NO. 35166

DEPT. NO. 3

## JURY DEMAND

TO: THE CLERK OF THE ABOVE-ENTITLED COURT:

Plaintiff KELLE HERZOG ("Plaintiff"), by and through her undersigned counsel, hereby demand that a trial of the above-entitled action be heard before a jury.

Tender is herewith made of the sum of $320.00 for the first day of trial jury fees.

**AFFIRMATION**
**Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document and/of

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE
(775) 329-3151

1  attachments do not contain the social security number of any person.

2  DATED this 2⁴ᵈ day of September, 2009.

3  ROBISON, BELAUSTEGUI, SHARP & LOW
4  A Professional Corporation
   71 Washington Street
5  Reno, Nevada 89503

6
7  BY: _____
8  CLAYTON P. BRUST, ESQ.
   Attorneys for Plaintiff
9  KELLE HERZOG

ROBISON,
BELAUSTEGUI,
SHARP & LOW
A PROFESSIONAL
CORPORATION
ATTORNEYS AT LAW
71 WASHINGTON ST.
RENO, NEVADA 89503
TELEPHONE
(775) 329-3151

-2-