1

2

3

4                    **UNITED STATES DISTRICT COURT**
                          **DISTRICT OF NEVADA**
5                            **RENO, NEVADA**

6

7  KELLE HERZOG,                          )          3:09-CV-567-ECR-RAM
                                          )
8        Plaintiff,                       )
                                          )
9  vs.                                    )          <u>ORDER</u>
                                          )
10 BANNER CHURCHILL COMMUNITY HOSPITAL    )
   and DOES I-X, inclusive,               )
11                                        )
         Defendants.                      )
12                                        )
   _____)
13

14       Plaintiff Kelle Herzog is a physician's assistant, formerly

15 employed by Defendant Banner Churchill Community Hospital

16 ("Banner").  Now pending before the Court is Defendant's motion (#3)

17 to dismiss.  Plaintiff opposed (#10) the motion (#3), and Defendant

18 replied (#15).

19       The motion is ripe, and we now rule on it.

20

21            **I. Factual and Procedural Background**

22       Plaintiff began working for Banner on July 28, 2008, as a

23 physician's assistant.  (Compl. ¶ 5 (#1).)  On the morning of April

24 14, 2009, a patient called and asked Plaintiff if Mike Forrest,

25 another physician's assistant, had talked to Plaintiff about a

26 prescription refill.  (<u>Id.</u> ¶ 7.)  Plaintiff, who did not know

27 anything about a refill, asked a medical assistant to pull the

28 patient's chart.  (<u>Id.</u> ¶ 7.)  When Plaintiff received the chart, she

noticed that the patient was prescribed 720 15-milligram pills of Oxycodone every 14 days.  (Id. ¶ 8.)  Alarmed at the amount of medication the patient was prescribed, Plaintiff consulted with various Banner staff members regarding how to proceed.  (Id. ¶¶ 9-20.)  Plaintiff ultimately contacted various doctors and administrators at Banner regarding the prescription, including the chief of staff, the emergency room director, the director of risk management, the hospital administrator and the clinic manager.  (Id. ¶¶ 9-20.)

Plaintiff also called the Nevada State Board of Medical Examiners ("the Board") and told them the scenario without revealing the patient's name.  (Id. ¶ 21.)  An investigator with the Board informed Plaintiff that Plaintiff was required by law to report the situation.  (Id. ¶ 21.)  When Plaintiff tried to call the Narcotics Task Force hotline to report the situation confidentially, however, the patient answered the Narcotic Task Force's phone.  (Id. ¶ 22.)  Plaintiff said she had the wrong number and that she meant to call the Sheriff's office.  (Id.)  Plaintiff then called the Sheriff's department, and when the Sheriff recommended she call the Narcotics Task Force, Plaintiff told him she could not do so.  (Id. ¶ 23.)  The Sheriff surmised the patient must be one of his deputy sheriffs, though Plaintiff never used the patient's name.  (Id. ¶ 23.)

Plaintiff was subsequently summoned to clinic manager DeAnne Adamson's office to meet with both her and Rhonda Carey, the director of risk management .  (Id. ¶ 25.)  There, Plaintiff was told, inter alia, she should never have reported the incident to the Board or the other agencies and that she was going to destroy the

1  lives of the police officer, Mr. Forrest and their families.  (<u>Id.</u>
2  ¶¶ 25-26.)

3     Following that meeting, Plaintiff had a phone conference with
4  Lori Gill ("Gill"), from Banner's human resources department, who
5  informed Plaintiff she was under investigation.  (<u>Id.</u> ¶ 44.)  Gill
6  told Plaintiff she was being placed on paid administrative leave
7  because of a possible HIPAA violation and because Plaintiff had
8  discrepancies in her story and sounded like she was under emotional
9  stress.  (<u>Id.</u> ¶ 46.)

10    In a subsequent conversation, Gill requested to meet with
11  Plaintiff at a later date, and told Plaintiff she could not bring an
12  attorney.  (<u>Id.</u> ¶ 48.)  Plaintiff was then informed she would be
13  terminated.  (<u>Id.</u> ¶ 49.)  Plaintiff, however, retained counsel, who
14  intervened on her behalf, and Plaintiff was not, in fact,
15  terminated.  (<u>Id.</u>)  Plaintiff was informed, however, that she would
16  receive formal discipline if she decided to return from
17  administrative leave.  (<u>Id.</u>)  Plaintiff understood that the
18  threatened disciplinary action would permanently mar her employment
19  record.  (<u>Id.</u> ¶ 50.) Plaintiff also felt "intimidated and threatened
20  by the hostile environment created by Defendant's actions to protect
21  itself from possible state investigations and to protect its
22  employee who was potentially over-prescribing controlled
23  substances."  (<u>Id.</u>)  Accordingly, Plaintiff resigned.  (<u>Id.</u>)

24    Plaintiff filed a complaint (#1) on September 9, 2009, in
25  Nevada state court.  Defendant removed (#1) the complaint to Federal
26  court on September 28, 2009, invoking our diversity jurisdiction.
27  On September 30, 2009, Defendant filed a motion to dismiss (#3).

28
                                    3

1  Plaintiff opposed (#10) the motion (#3), and Defendant replied
2  (#15).

3
4                    **II. Motion to Dismiss Standard**

5      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be
6  granted if the complaint fails to "state a claim to relief that is
7  plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,
8  570 (2007).  On a motion to dismiss, "we presum[e] that general
9  allegations embrace those specific facts that are necessary to
10 support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555,
11 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889
12 (1990)) (alteration in original).  Moreover, "[a]ll allegations of
13 material fact in the complaint are taken as true and construed in
14 the light most favorable to the non-moving party." In re Stac
15 Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation
16 omitted).

17     Although courts generally assume the facts alleged are true,
18 courts do not "assume the truth of legal conclusions merely because
19 they are cast in the form of factual allegations." W. Mining
20 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Accordingly,
21 "[c]onclusory allegations and unwarranted inferences are
22 insufficient to defeat a motion to dismiss." In re Stac Elecs., 89
23 F.3d at 1403 (citation omitted).

24     Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is
25 normally limited to the complaint itself.  See Lee v. City of L.A.,
26 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on
27 materials outside the pleadings in making its ruling, it must treat
28                              4

the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond.  Fed. R. Civ. P. 12(d); see United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment."  Ritchie, 342 F.3d at 908.

    If documents are physically attached to the complaint, then a court may consider them if their "authenticity is not contested" and "the plaintiff's complaint necessarily relies on them."  Lee, 250 F.3d at 688 (citation, internal quotations, and ellipsis omitted). A court may also treat certain documents as incorporated by reference into the plaintiff's complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim."  Ritchie, 342 F.3d at 908.  Finally, if adjudicative facts or matters of public record meet the requirements of Fed. R. Evid. 201, a court may judicially notice them in deciding a motion to dismiss.  Id. at 909; see Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### III. Analysis

Plaintiff's complaint asserts a single cause of action for "wrongful termination."  In her opposition to the present motion, Plaintiff clarifies that the legal theory under which she is seeking redress is wrongful constructive discharge in violation of public policy.  That claim requires a plaintiff to prove that: "(1) the employee's resignation was induced by action and conditions that are violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." Dillard Dept. Stores, Inc. v. Beckwith, 989 P.2d 882, 885 (Nev. 1999).

The second element of a constructive discharge claim is satisfied "when, looking at the totality of the circumstances, a reasonable person in [the employee's] position would have felt that [she] was forced to quit because of intolerable and discriminatory working conditions."  See Sanchez v. City of Santa Ana, 915 F.2d 424, 431 (9th Cir. 1990).  Defendant argues that Plaintiff has alleged no facts demonstrating that Plaintiff's working conditions were so intolerable that she was forced to quit.  (D.'s Mot. to Dismiss at 3-4 (#3).)  We agree.

Whether working conditions were sufficiently intolerable so as to "justify a reasonable employee's decision to resign is normally a factual question for the jury."  Sanchez, 915 F.2d at 431.  In

6

1  general, however, "a single isolated incident is insufficient as a
2  matter of law to support a finding of constructive discharge." Id.
3  A plaintiff alleging a constructive discharge thus must show
4  aggravating factors, such as a continuous pattern of discriminatory
5  treatment." Id. (internal quotation marks and citation omitted).

6      In this case, Plaintiff's allegations do not support a claim of
7  constructive discharge.  The act of placing Plaintiff on paid
8  administrative leave, alone, is insufficient to support a charge of
9  constructive discharge. See Schnidrig v. Columbia Mach., Inc., 80
10 F.3d 1406, 1412 (9th Cir. 1996)(holding that an employee who "was
11 not demoted, did not receive a cut in pay, was not encouraged to
12 resign or retire, and was not disciplined" did not set out a viable
13 constructive discharge claim); Levenstein v. Salafsky, 414 F.3d 767,
14 775 (7th Cir. 2005)("We conclude that a person who is on leave with
15 pay, with a temporary (though unsatisfying) reassignment pending an
16 investigation of serious job misconduct, who resigns rather than
17 waits for the conclusion of reasonable prescribed due process
18 procedures of the institution, has not from an objective standpoint
19 been constructively discharged.").  Moreover, Defendant's other
20 actions with respect to Plaintiff are not plausibly characterized as
21 "aggravating factors."  Though we have not discovered, in the case
22 law, a precise definition for that term, the paradigmatic example of
23 an "aggravating factor" is a "continuous pattern of discriminatory
24 treatment." Sanchez, 915 F.2d at 431.  None of Defendant's actions,
25 taken singularly or collectively are reasonably interpreted as
26 rising to that level.

27

28                                7

1   It was not unreasonable for Plaintiff to feel uncomfortable in
2   her situation, but the conditions to which Plaintiff was subjected
3   were not, as a matter of law, so intolerable that a reasonable
4   person would leave the job.  See Brooks v. City of San Mateo, 229
5   F.3d 917, 930 (9th Cir. 2000)(noting that for a constructive
6   discharge claim to succeed, working conditions must be so
7   intolerable that a reasonable person would leave the job).  We thus
8   conclude that Plaintiff has failed to state a claim for wrongful
9   constructive discharge in violation of public policy.

10

11                        **IV.  Leave to Amend**

12   Under Rule 15(a) leave to amend is to be "freely given when
13   justice so requires."  In general, amendment should be allowed with
14   "extreme liberality."  Owens v. Kaiser Found. Health Plan, Inc., 244
15   F.3d 708, 712 (9th Cir. 2001) (quoting Morongo Band of Mission
16   Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)).  If factors
17   such as undue delay, bad faith, dilatory motive, undue prejudice or
18   futility of amendment are present, leave to amend may properly be
19   denied in the district court's discretion.  Eminence Capital, LLC v.
20   Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

21   In light of the liberal spirit of Rule 15(a), Plaintiff should
22   have an opportunity to amend her complaint.  If the amended
23   complaint is similarly deficient, however, we may be forced to
24   conclude that leave to further amend would be futile.

25

26

27

28                                  8

### V. Conclusion

Plaintiff's claim for wrongful constructive discharge in violation of public policy cannot survive a motion to dismiss because Plaintiff does not allege facts which, if true, would constitute constructive discharge.  Generally, whether working conditions were sufficiently intolerable and discriminatory as to justify a reasonable employee's decision to resign is a factual question for the jury.  In this case, however, Plaintiff's allegations are insufficient as a matter of law to support a finding of constructive discharge.

**IT IS THEREFORE HEREBY ORDERED THAT** Defendant's Motion to Dismiss Plaintiff's Complaint (#3) is **GRANTED**. Plaintiff shall have twenty-one (21) days in which to file an amended complaint.

DATED: April 6, 2010

Edward C. Reed.
_____
UNITED STATES DISTRICT JUDGE

9